# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Wilmington Trust, N.A., as successor trustee to Citibank N.A. as trustee for Structured Asset Mortgage Investments II Trust 2007-AR3 Mortgage Pass-through Certificates, Series 2007-AR3,

Plaintiff

v.

Hidden Crest/Parkhurst Community Association, et al.,

Defendants

Case No. 2:16-cv-01808-JAD-NJK

**Order Granting Summary Judgment in Favor of Wilmington Trust on Quiet-Title Claim, Dismissing Remaining Claims, and Closing Case**

[ECF Nos. 32, 38, 55, 56, 57]

Wilmington Trust brings this action to challenge the effect of the 2012 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] Wilmington Trust sues the Hidden Crest/Parkhurst Community Association (the HOA), which conducted the foreclosure sale, and foreclosure-sale purchaser Bourne Valley Court Trust, seeking a declaration that the sale was invalid or that Bourne Valley purchased the property subject to Wilmington Trust's security interest, or alternatively, damages. Bourne Valley moves to dismiss, and all parties move for summary judgment in their favor.[2] Because Wilmington Trust has demonstrated that its predecessor-in-interest validly tendered the superpriority portion of the HOA lien but the HOA foreclosed anyway, I grant summary judgment in favor of Wilmington Trust on its quiet-title claim, dismiss its remaining claims, deny all remaining motions, and close this case.

---

[1] ECF No. 1.

[2] I find these motions suitable for disposition without oral argument. L.R. 78-1.

## Background

Arnida and Melecio Gamiao purchased the home at 1452 Bourne Valley Court in Las Vegas, Nevada, in 2007 with a $243,750 loan from Countrywide Bank, N.A., secured by a deed of trust.[3] That deed of trust was assigned in 2011 to Citibank as the Trustee for the Holders of Structure Asset Mortgage Investments II Trust 2007-AR3, Mortgage Pass-through Certificates Series 20074-AR3, and Wilmington Trust is "the successor trustee" to Citibank.[4] The home is located in the Concordia at Wigwam planned-unit development and subject to the governing documents for the Hidden Crest/Parkhurst Community Association.[5]

### A.     The foreclosure process and the bank's tender

The Nevada Legislature gave homeowner associations a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[6] When the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2009.[7]

---

[3] ECF No. 38-1 at 2 (deed of trust).

[4] ECF No. 38-2 at 2 (5/25/11 assignment from Countrywide to Citibank); ECF No. 1 at ¶ 14; ECF No. 56-3 at 3. Wilmington Trust's interest is not disputed.

[5] ECF No. 38-1 at 18 (planned-unit-development rider).

[6] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014).

[7] ECF No. 38-3 at 2 (notice of lien for delinquent assessments); ECF No. 38-4 at 2 (notice of default and election to sell); and 38-5 at 2 (notice of trustee's sale). Neither the documents nor the parties explain why three years passed between the notice of election to sell and the notice of trustee's sale.

When the then-trustee Bank of America learned of the impending foreclosure, its counsel,

the law firm of Miles, Bauer, Bergstrom & Winters, LLP,[8] sent a letter to the HOA stating that

its client "hereby offers to pay" the nine months of assessments for common expenses incurred

before the date of the HOA's notice of delinquent assessment dated March 25, 2009, and asking

the HOA to "refrain from taking further action to enforce this HOA lien until" the parties could

"speak to attempt to fully resolve all issues."[9] The HOA's agent Angius & Terry Collections,

LLC (ATC) responded with a "Demand Statement," reflecting that the monthly assessments in

2009 were $35 per month, but demanding $4,439.43, consisting mostly of late fees and legal

charges.[10] The statement does not reflect any charges for maintenance or nuisance abatement.

Miles Bauer responded a week later by sending a check for $315 along with a letter that

explained that Miles Bauer was including a check to pay off the superpriority amount of the lien:

> Our client has authorized us to make payment to you in the amount
> of $315.00 to satisfy its obligations to the HOA as a holder of the
> first deed of trust against the property. Thus, enclosed you will
> find a cashier's check made out to ANGIUS & TERRY, LLC in
> the sum $315.00, which represents the maximum 9 months[']
> worth of delinquent assessments recoverable by an HOA.[11]

The letter further stated that "This is a non-negotiable amount and any endorsement of said

cashier's check on your part, whether express or implied, will be strictly construed as an

unconditional acceptance on your part of the facts stated herein and express agreement that

[Bank of America's] financial obligations towards the HOA in regards to the real property . . .

---

[8] The letter reflects that Miles Bauer was acting for MERS as nominee for Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP. ECF No. 38-6 at 6. So, for ease of reference, I refer to the Miles Bauer client as Bank of America.

[9] *Id*. at 7.

[10] *Id*. at 11–13.

[11] *Id*. at 16.

have now been 'paid in full.'"[12] The check was rejected, and the HOA foreclosed on the

property on May 4, 2012.[13] The Bourne Valley Court Trust was the winning bidder at $3,800.[14]

The Trustee's Deed Upon Sale states that the HOA foreclosed on the non-priority

portion of its lien only, and not on the superpriority portion:

> Angius & Terry Collections, LLC, as agent for Hidden
> Crest/Parkhurst Community Association does hereby grant and
> convey, but without warranty expressed or implied to Bourne
> Valley Court Trust (herein called Grantee), **that portion of its
> right, title and interest secured by the non-priority portion of
> its lien** under NRS 116.3116 in and to that certain property . . .
> commonly known as: 1452 Bourne Valley Court . . . .[15]

The opening-bid instructions that the HOA's agent provided to the sale crier before the sale was

announced read—consistent with that "non-priority portion" language—that

> "The person crying the sale must announce the following: 'You are
> hereby being notified by the Association . . . that the opening bid
> does not include the super-priority lien amount of $3,248.39, as
> well as any other fees or collection costs incurred by the
> Association in an attempt to collect the dept [sic]. That **the super-
> priority lien amount will still be a lien on the property once the
> sale is completed**. . . . The purchaser buys this property with full
> knowledge and understanding of same."[16]

Nearly a year later and at the request of counsel for Bourne Valley and because there was

"litigation pending,"[17] a "Corrective Trustee's Deed Upon Sale" was recorded on April 9, 2013.

It removed the narrow "non-priority portion" language and stated instead that the HOA had more

---

[12] *Id.*

[13] ECF No. 38-7 at 3 (foreclosure deed recorded on 5/15/12).

[14] *Id.*

[15] ECF No. 56-10 at 2 (emphasis added).

[16] ECF No. 56-8 at 20 (emphasis added).

[17] *Id.* at 33.

comprehensively conveyed "that portion of its right, title and interest secured by its lien under NRS 116.3116."[18]

## B.    The bank's lawsuit

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, [the] proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[19]  Wilmington Trust brings this action to save its deed of trust from extinguishment.  It pleads four claims: quiet title, breach of NRS 116.3116, wrongful foreclosure, and injunctive relief.[20]  The quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[21]  The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[22]  Although Wilmington Trust pleads "injunctive relief" as its fourth cause of action,[23] injunctive relief is a remedy, not an independent claim for relief, so I construe the fourth claim simply as a prayer for injunctive relief in conjunction with the quiet-title claim.  Wilmington Trust offers a handful of independent

---

[18] ECF Nos. 56-12 at 3 (corrective deed); 57-1 at 18 (depo. of Heather Oliver).

[19] *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d at 419.

[20] ECF No. 1.  Although Wilmington Trust pleads "injunctive relief" as its fourth cause of action, *see id*. at 14, injunctive relief is a remedy, not an independent claim for relief, so I construe the fourth claim simply as a prayer for injunctive relief in conjunction with the quiet-title claim.

[21] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[22] *Id*. at 1112.

[23] *See id*. at 14.

theories for why its security interest was preserved: (1) Nevada's HOA foreclosure scheme violated the trustee's due process rights; (2) the notices were deficient; (3) the sale was commercially unreasonable; and (4) the trustee tendered the full superpriority portion of the lien and it was improperly rejected.

**C.    The pending motions**

Bourne Valley moves to dismiss Wilmington Trust's claims, offering arguments against each theory of liability.[24] Wilmington Trust opposes that motion and countermoves for summary judgment "confirming the deed of trust was not extinguished" because the tender satisfied the superpriority portion of the deed, the deed itself reflects that the HOA sold only the "non-priority" portion of its lien, or the statutory scheme was facially unconstitutional.[25] Both Bourne Valley[26] and the HOA[27] oppose that motion.

After discovery closed, each active party[28] filed a separate motion for summary judgment. Bourne Valley argues that the bank's claims are time-barred by the statute of limitations.[29] Wilmington Trust reurges its tender argument and adds that the sale should be set aside for unfairness.[30] And the HOA argues principally that because the bank's claims against it are pled in the alternative and conditioned on the court finding that the foreclosure sale

---

[24] ECF No. 32.

[25] ECF No. 38 at 2.

[26] ECF No. 41.

[27] ECF No. 40.

[28] ATC Assessment Collection Group, LLC failed to respond to this suit and the Clerk entered default against it. ECF No. 23.

[29] ECF No. 55.

[30] ECF No. 56.

extinguished the deed of trust, if Wilmington Trust prevails in its tender argument, those conditional claims should be dismissed as moot.[31]

**Analysis**

**A.    Standards for competing summary-judgment motions**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[32]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[33]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[34]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[35]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[36]  When instead

---

[31] ECF No. 57.

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[33] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[34] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 819 (9th Cir. 1995).

[35] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[36] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[37]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[38]

**B.      The quiet-title claim is timely.**

Bourne Valley argues that Wilmington Trust's quiet-title claim is barred because it was filed after the statute of limitations on that claim ran.  Bourne Valley contends that this claim is governed by the three-year time limit in NRS 11.190(3), which governs "action[s] upon a liability created by statute" or, at best, Nevada's four-year catch-all statute of limitations.  Either way, the claim is time barred because this lawsuit was filed more than four years after the foreclosure sale.[39]

In most HOA foreclosure-sale cases, claims begin to accrue at the time of the sale or the recording of the deed.  But, as Wilmington Trust points out in its opposition, this case is different.  The beneficiary of the deed of trust would not have known from the original foreclosure-sale deed that its interest may have been impacted by the sale.  That deed stated that the HOA was foreclosing on the non-priority portion of its lien only.[40]  It was not until Bourne Valley had the "corrective" deed filed eleven months later on April 9, 2013, that Wilmington

---

[37] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[38] *Celotex*, 477 U.S. at 322.

[39] ECF No. 55.

[40] ECF No. 56-10.

1 Trust had any reason to suspect that the foreclosure-sale purchaser would claim that the sale

2 extinguished its deed of trust.[41]  So the clock on Wilmington Trust's quiet-title claim did not

3 begin to tick until April 9, 2013—about three years and three months before this lawsuit was

4 filed.  As I have held in countless of these HOA-foreclosure cases, such a quiet-title claim is

5 subject to the four-year limitations period in NRS 11.220.[42]  Wilmington Trust's quiet-title claim

6 is therefore timely, so I deny Bourne Valley's Motion for Summary Judgment Based on Statute

7 of Limitations and turn to Wilmington Trust's motions for summary judgment on that quiet-title

8 claim.[43]

9
10 **C.    The tender of the full superpriority amount saved the deed of trust from extinguishment.**

11        Urging summary judgment in its favor, Wilmington Trust primarily argues that its

12 predecessor's tender of $315, which consists of nine months' worth of HOA assessments on this

13 property makes this case procedurally identical to *Bank of America v. SFR Investments Pool 1,*

14 *LLC* ("*Diamond Spur*"), in which the Nevada Supreme Court, sitting en banc, held that a nearly

15 identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the

16 HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion[,] . . .

17

18

[41] ECF Nos. 56-12 at 3 (corrective deed); 57-1 at 18 (depo. of Heather Oliver).

19 [42] *See U.S. Bank Nat'l Ass'n v. SFR Investments Pool 1, LLC*, 376 F. Supp. 3d 1085, 1091 (D.
20 Nev. Mar 27, 2019) (explaining why Nevada's catch-all four-year limitations period applies and
the three- and five-year provisions are inapplicable).  I incorporate herein the entirety of that
21 statute-of-limitations analysis, as the arguments advanced by the parties here are the very same,
regurgitated ones that have been, and continue to be, stamped out in these assembly-line cases
22 and briefs.  And I am unpersuaded by the more recent trial-court decisions that Bourne Valley
relies on in its reply brief because none of the language that Bourne Valley quotes from them
23 demonstrates that such claims are "action[s] upon a liability created by statute," and not merely
equitable quiet-title claims.  *See* ECF No. 65 at 2–5.

[43] ECF Nos. 38, 56.

[and the foreclosure-buyer] purchased the property subject to [the] deed of trust."[44]  The

*Diamond Spur* Court explained that "[a] valid tender of payment operates to discharge a lien or

cure a default."[45]  Although a valid tender requires payment in full, for purposes of satisfying an

HOA's superpriority lien and thus saving a deed of trust from extinguishment under the version

of the foreclosure statute then in effect, the bank needed to pay only "charges for maintenance

and nuisance abatement, and nine months of unpaid assessments."[46]  Because the bank paid nine

months' worth of assessments based on the HOA's information "and the HOA did not indicate

that the property had any charges for maintenance or nuisance abatement," the Court found that,

"[o]n the record presented, this was the full superpriority amount."[47]

    *Diamond Spur* is dispositive of this case and compels summary judgment in favor of

Wilmington Trust.[48]  The record shows undisputedly that Miles Bauer validly tendered the full

amount of the superpriority lien to the HOA.  The only charges that could comprise the

superpriority portion of the HOA's lien were "charges for maintenance and nuisance abatement,

and nine months of unpaid assessments."[49]  The HOA's own ledger reflects no charges for

---

[44] *Bank of Amer. v. SFR Investments Pool 1, LLC (Diamond Spur)*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018).

[45] *Diamond Spur*, 427 P.3d at 117.

[46] *Id*. (citing 116.3116(2) and *SFR*, 334 P.3d at 412).

[47] *Id.* at 118.

[48] This conclusion is further supported by the Ninth Circuit's decision in *Bank of America v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620 (April 3, 2019), in which the panel applied *Diamond Spur* to validate a materially identical tender.  *See id.* at 623 ("the bank's tender plainly satisfied the superpriority portion of Arlington West's lien.  Based on the ledger provided by Arlington West, the bank tendered what it calculated to be nine months of HOA dues ($423), and Arlington West does not dispute that this amount was correctly calculated.  The ledger did not indicate that the property had incurred any charges for maintenance or nuisance abatement, which are the only other fees that could have been included in the superpriority amount.  The tender thus was sufficient.").

[49] *Diamond Spur*, 427 P.3d at 117 (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).

maintenance or nuisance abatement.[50]  And the accounting it provided just before the tender

indicated that the assessments were $32 per month for many years, but had increased to $35 per

month at the beginning of 2012.[51]  Miles Bauer used the higher $35 figure, multiplied it by nine

months for a total of $315, and tendered that sum to the HOA.[52]  On this record,[53] Miles Bauer's

$315 tender satisfied the full superpriority portion of the lien.  So, as the Nevada Supreme Court

held in *Diamond Spur*, the foreclosure sale on the entire lien resulted in a void sale as to the

superpriority portion.  The "first deed of trust [thus] remained after foreclosure," and "the HOA

could not convey full title to the property."[54]

---

[50] ECF No. 38-6 at 11.

[51] *Id*.

[52] *Id*. at 15–17.

[53] Bourne Valley argues that Wilmington Trust's evidence of tender is insufficient to eliminate a genuine issue of fact.  ECF No. 41 at 19.  But the Miles Bauer evidence, which this court has now seen in dozens of these HOA-foreclosure cases, and which is being replicated across hundreds of cases in Nevada's state and federal courts, sufficiently establishes that tender was made and rejected.  *See* ECF No. 38-6.  Douglas E. Miles's affidavit is heavily detailed, relates specifically to this property, and established that Mr. Miles is qualified to lay a foundation for the admissibility of the tender documents under the business-records exception to the hearsay rule.  At best, Bourne Valley suggests that Miles Bauer has given its counsel access to its database, but it fails to explain how that access compromises this evidence.  Wilmington Trust has presented authenticated business records to support the tender, and Bourne Valley offers nothing but speculation to refute them.  *See O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)) (the summary-judgment burden requires "more than mere speculation, conjecture, or fantasy.").

To the extent that Bourne Valley contends that evidence on summary judgment must be "admissible," *see* ECF No. 41 at 20 (citing Nevada's summary-judgment rule), it ignores the 2010 amendment to Federal Rule of Civil Procedure 56, which "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment.  *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).  Instead, the rule mandates that the *substance* of the proffered evidence be admissible at trial.  *Id*.; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment; *see also Sweet People Apparel, Inc. v. Phoenix Fibers, Inc*., 748 F. App'x 123 (9th Cir. 2019) (Dorsey, J., dissenting) (collecting cases).  I find that Wilmington Trust has met that burden.

[54] *Diamond Spur*, 427 P.3d at 121.

**D. The tender was not impermissibly conditional.**

Bourne Valley argues that the Miles Bauer tender and the letters accompanying it were impermissibly conditional or otherwise invalid.[55] The letter sent with the check[56] stated that the $315 payment was "a non-negotiable amount and any endorsement . . . will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the first-deed-of-trust holder's] financial obligations towards the HOA in regards to" the property "have now been 'paid in full.'"[57] Bourne Valley argues that, because of this language, the HOA's acceptance of that $315 tender would have caused it "to categorically waive its right to super-priority treatment of maintenance, nuisance and abatement charges" in violation of NRS Chapter 116.[58] But the HOA had no such right as to this property because there were no maintenance or nuisance-abatement charges assessed against it. So, as the *Diamond Spur* Court expressly held when considering verbatim language in the Miles Bauer tender letter in that case, the bank "had a legal right to insist on" the condition because "acceptance of the tender would satisfy the superpriority portion of the lien, preserving" the bank's interest in the property.[59] As

---

[55] ECF No. 41 at 11–18.

[56] Nor was the tender invalid because it was not a cashier's check. Chapter 116 does not require a tender to be made by cashier's check, and Bourne Valley has raised no genuine fact that suggests that, had the HOA cashed the Miles Bauer check instead of rejecting it, it would not have been honored. *See Chinatown St. Tr. v. Bank of Am., N.A.*, 2018 WL 6609590, at *1 (Nev. Ct. App. Dec. 7, 2018) (unpub.) ("NRS Chapter 116 does not require a cashier's check, nor does it require the tendering party to place the funds with the court or record its claim.").

[57] ECF No. 38-6 at 16.

[58] ECF No. 41 at 13. Bourne Valley takes this point a step further, arguing that accepting this tender would have also caused the HOA to waive its right to maintenance and nuisance-abatement charges in any future case involving the bank. *Id*. at 16. This open-the-floodgates argument is belied by the fact that the letter cabins this condition to the bank's "financial obligations towards the HOA ***in regards to the real property located at 1452 Bourne Valley Court***." ECF No. 38-6 at 16 (emphasis added).

[59] *Diamond Spur*, 427 P.3d at 118.

12

the Nevada Supreme Court has found that the Miles Bauer form letters used in this case do not

invalidate an otherwise proper tender of the superpriority portion of an HOA lien, Bourne

Valley's arguments that their language is impermissible fail.

**E.     Equitable-subrogation principles do not apply.**

Bourne Valley also argues that by paying the superpriority portion of the lien, the lender

did not extinguish the lien; instead, it just became equitably subrogated to the rights of the

HOA.[60]  Bourne Valley relies on authority generally discussing the doctrine of equitable

subrogation to support its position.  But the specific rules from the Nevada Supreme Court's en

banc decision in *Diamond Spur* supplant that authority in this HOA lien-foreclosure context.

The *Diamond Spur* Court specifically addressed the legal effect of tendering the superpriority

portion of an HOA's lien and concluded that "[a] valid tender of payment operates to discharge"

the lien,[61] "cure[s] the default[,] and prevent[s] foreclosure as to the superpriority portion of the

HOA's lien by operation of law."[62]  So, contrary to Bourne Valley's take, Nevada law expressly

recognizes that tender does not "operate[] as an assignment" and does not cause the lender to

"become[] subrogated to the rights of the Association."[63]  "Tendering the superpriority portion of

an HOA lien does not . . . assign . . . an interest in land.  Rather, it *preserves* a preexisting

interest," allowing the lender to "maintain its senior interest as the first deed of trust holder,"

curing the default, and preventing foreclosure.[64]  Because the Nevada Supreme Court's 2018

---

[60] ECF No. 41 at 3–8.

[61] *Diamond Spur*, 427 P.3d at 117.

[62] *Id*. at 120.

[63] ECF No. 41 at 5.

[64] *Diamond Spur*, 427 P.3d at 119–20.

published en banc decision on this precise point controls here, Bourne Valley's equitable-subrogation argument fails as a matter of law.

**F.    Bourne Valley's further equitable defenses fail.**

Bourne Valley next argues that it is an innocent, third-party bona fide purchaser (BFP), and the rights of such innocents must prevail.[65]  Third-party purchaser SFR Investments Pool, LLC made the same argument in *Diamond Spur*, and the Nevada Supreme Court rejected it, too. The Court held that "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceedings renders the sale void."[66]  And that's what happens when an HOA forecloses on the entire lien after valid tender of the superpriority portion—because the lien is no longer in default, the trustee lacks the power to foreclose.  So "foreclosure on the entire lien result[s] in a void sale as to the superpriority portion," "the HOA [can] not convey full title to the property," and the "first deed of trust remain[s] after the foreclosure."[67]  BFP or "innocent" status thus does not change the legal reality that Bourne Valley took this property subject to the first trust deed.

Bourne Valley also contends that the doctrines of waiver, unclean hands, and equitable estoppel preclude me from entering summary judgment in favor of Wilmington Trust.[68]  But the facts it relies on fail to support an application of these doctrines.  Bourne Valley suggests that these doctrines bar Wilmington Trust "from claiming it paid the super-priority portion this late in the game" because it waited a few years before filing this suit.[69]  No Wilmington Trust's predecessor in interest made it clear to the HOA that it was satisfying the superpriority amount

---

[65] ECF No. 41 at 8–9.

[66] *Diamond Spur*, 427 P.3d at 121.

[67] *Id*.

[68] ECF No. 41 at 8–9.

[69] *Id*. at 23.

with its timely tender back in 2012. Bourne Valley offers no case in which similar conduct has been found preclusive of equitable relief, and I don't find this conduct here to rise to the level justifying application of any of these doctrines.[70]

### G. Wilmington Trust's remaining claims must be dismissed because they are contingent on extinguishment.

With the quiet-title claim resolved in favor of Wilmington Trust, I consider the fate of its remaining claims. These second and third causes of action are for breach of NRS 116.1113 and wrongful foreclosure.[71] Both are pled against the HOA and ATC only, and both are pled as alternatives to the quiet-title claim and conditioned on the failure of that claim.[72] In its motion for summary judgment, the HOA asks the court to dismiss these claims as moot.[73] Because that condition will not materialize, these claims are now moot, so I grant the HOA's motion to the extent it seeks to dismiss Wilmington Trust's second and third causes of action.

### Conclusion

IT IS THEREFORE ORDERED that Defendant Bourne Valley Court Trust's motions to dismiss and for summary judgment **[ECF Nos. 32, 55] are DENIED**;

IT IS FURTHER ORDERED that Plaintiff Wilmington Trust National Association's Counter-motion for Partial Summary Judgment and Amended Motion for Partial Summary

---

[70] Bourne Valley offers many of these same arguments in its motion to dismiss. *See* ECF No. 32. I reject them as a basis for dismissal for the same reasons.

[71] ECF No. 1 at 11–13.

[72] *Id*. at ¶ 58 ("If it is determined Hidden Crest's foreclosure sale extinguished the senior deed of trust . . . Hidden Crest and its agent ATC's breach of its obligation of good faith will cause Wilmington Trust to suffer general and special damages . . . ."); ¶ 67 ("If it is determined Hidden Crest's foreclosure sale extinguished the senior deed of trust . . . Hidden Crest's and its agent ATC's actions will cause Wilmington Trust to suffer general and special damages . . . .").

[73] ECF No. 57.

Judgment **[ECF Nos. 38, 56] are GRANTED in part: Wilmington Trust is entitled to summary judgment on its quiet-title claim based on a valid, pre-foreclosure tender of the full superpriority portion of the lien and a declaration that Bourne Valley Court Trust purchased the property subject to the deed of trust.**  The motions are denied in all other respects;

IT IS FURTHER ORDERED that Hiddencrest/Parkhurst Community Association's Motion for Summary Judgment **[ECF No. 57] is GRANTED in part: Wilmington Trust's remaining claims are DISMISSED as moot**, resulting in the termination of all claims in this case against the Hiddencrest/Parkhurst Community Association and ATC Assessment Collection Group, Inc., fka Angius & Terry Collection, LLC;

IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER FINAL JUDGMENT in favor of the Plaintiff and against Defendant Bourne Valley Court Trust, DECLARING that:**

> **Defendant Bourne Valley Court Trust purchased the property at 1452 Bourne Valley Court in Las Vegas, Nevada, subject to the deed of trust recorded on March 13, 2007,**

**and CLOSE THIS CASE.**

Dated: September 4, 2019

_____ _____
U.S. District Judge Jennifer A. Dorsey